Dear Representatives Accardo and Bruneau:
We have received your requests for an Attorney General's Opinion regarding the effectiveness of Act No. 10 of the Third Extraordinary Session of 1994, commonly referred to as the "Motor Voter Act". Act 10 amends and reenacts provisions of the Louisiana Election Code to provide for the implementation of the National Voter Registration Act of 1993. The act was submitted for "preclearance" by our office to the United States Department of Justice in compliance with Section 5 of the Voting Rights Act of 1965. On November 21, 1994, the state received a letter from the Justice Department approving part of Act 10 and interposing an objection to part of Act 10, as follows:
 [E]xcept as set forth below, the Attorney General does not interpose any objection to the specified changes. . . . We cannot reach the same conclusion with respect to the requirement that first-time voters who register by mail in order to identify themselves at the polls present a current driver's license or other picture identification card. . . . Therefore, on behalf of the Attorney General, I must object to the driver's license/picture identification requirement for first-time voters who register by mail proposed by Act No. 10.
You have both requested an opinion on the following questions:
 1. Does the provision contained in R.S. 24:175 apply in any way to provisions of an Act to which the United States Department of Justice has interposed an objection? If so, under what authority?
 2. Are any of the provisions contained in Act No. 10 legally enforceable? If so, under what authority?
 QUESTION NUMBER ONE
LSA-R.S. 24:175 states:
 § 175. Severability
 A. Unless otherwise specifically provided therein, the provisions of each act of the legislature are severable, whether or not a provision to that effect is included in the act. If any provision or item of an act, or the application thereof, is held invalid, such invalidity shall not affect other provisions, items, or applications of the act which can be given effect without the invalid provision, item, or application.
 B. This Section shall apply to acts of the legislature affecting general, and local and special laws, and statutes of the state, including the Louisiana Revised Statutes of 1950, the Civil Code of the state of Louisiana, the Louisiana Code of Civil Procedure, the Louisiana Code of Criminal Procedure, the Louisiana Code of Evidence, and the Louisiana Code of Juvenile Procedure.
The question is whether a partial objection to Act 10 by the Justice Department is a declaration of the invalidity of Act 10, such that the severability clause is applicable. The "validity" of an act is equivalent to the sustainability and effectiveness of an act, as distinguished from that which exists in fact or appearance, but has not the requisites to enable it to be recognized and enforced by law. See Black's LawDictionary, Fifth Edition, p. 1390, definition of "valid".
An objection by the Justice Department of a legislative act is a temporary situation which can be reversed by the Justice Department or by the courts. It is our opinion that a partial objection by the Justice Department is equivalent to the invalidity of said portion of the act, due to the fact that the objection renders said portion of the act ineffective. The question, therefore, is whether the invalid portion of Act 10 can be severed from the remaining portions of the act, so that the effective portions of Act 10 may be implemented?
The courts have held that "the test for severability is whether the unconstitutional portions of the statute are so interrelated and connected with the constitutional parts that they cannot be separated without destroying the intention manifested by the legislature in passing the act." State v. Cinel,1994 WL 673948 (La. 11/30/94). Act 10 does not provide any language as to the legislative intent. Representative Bruneau's request stresses the point that the legislature adopted the act as a comprehensive change in the voter registration system and that "several legislators would not have voted for the change in the voter registration system if the provision regarding the picture identification had not been included in the overall scheme" of the act. Without any specific language in Act 10, the legislative intent is, in our opinion, undeterminable. Therefore, the next question is whether Act 10 is one that is so integrated that it cannot be severed.
Integration is the process of making something whole or complete. We do not find that Act 10 would be incomplete and/or not whole if the objection by the Justice Department to the presentation of a picture i.d. is not implemented, while the remainder of the act is implemented. Our legislative policy is to treat all the provisions of an act separately if the act is not one which is systematically integrated. (R.S. 24:175) Such has been our policy for at least the last 12 years, as it has historically been a contemporaneous practice to treat provisions of acts separately. The most recent example which comes to mind is Act 145 of 1994 and other judicial legislative acts which enact or amend provisions of our law and in which the Justice Department objected to portions of the Acts. In such cases, it has been our policy to implement those portions of the act which have not been objected to by the Justice Department. Therefore, to opine that the severability clause is not applicable in this matter would be contradictory to our historical state policy of separating acts when necessary and practical. We opine that this situation is one in which the severability clause should be applied, and those portions of Act 10 which have not been objected to by the Justice Department should be implemented.
QUESTION NUMBER TWO
Our answer to question number two is stated above. However, our research has revealed a case which we think it is necessary to distinguish in this opinion.
In the case of Pitts v. Busbee, 511 F.2d 126 (5th Cir. 1975), the court held that the United States Attorney General's objection to parts of 1973-74 acts had legal effect of preventing effectiveness of these acts from the beginning and entirely, and not only those parts to which the Attorney General objected. The court referred to the Supreme Court case of Georgia v.United States, 411 U.S. 526 at 538, 93 S.Ct. 1702 at 1709,36 L.Ed.2d 472 at 483, which states:
 `This portion [§ 5] of the Voting Rights Act essentially freezes the election laws of the covered States unless a declaratory judgment is obtained in the District Court for the District of Columbia holding that a proposed change is without discriminatory purpose or effect. The alternative procedure of submission to the Attorney General `merely gives the covered State a rapid method of rendering a new state election law enforceable.' Allen v. State Board of Elections, 393 U.S. [544] at 549, 89 S.Ct. [817] at 823, 22 L.Ed.2d 1 (Emphasis added)
 (citation omitted) And Mr. Justice Powell, dissenting in the same case, refers to the harsh requirement of § 5 that a State `submit its legislation for advance review' and, in a footnote, quotes Mr. Justice Black's reference to
 ` . . . the power vested in federal officials under § 5 of the Act to veto state laws in advance of their effectiveness [which] `distorts our constitutional structure of government.' South Carolina v. Katzenbach, 383 U.S. 301, 358, 86 S.Ct. 803, 834, 15 L.Ed.2d 769 (1966) (concurring and dissenting).' (Emphasis added).
The case does not make reference to any severability clause in the act or in Georgia's laws. This point is definitely distinguishable from Louisiana law, which specifically provides in general for the severability of provisions of acts.
Another distinguishing point is the fact that the Georgia legislative act in question was one which the court found to be an integrated provision providing for the manner in electing county commissioners. Georgia's legislative act provided for a plan as to the number of commissioners and the manner in which they were to be elected. The Justice Department objected to the manner of electing the commissioners, but did not object to the number of the commissioners. The court did not give effectiveness to the entire act because, as they stated in a footnote, "[T]o give the Attorney General what amounts to line-item veto power over state statutes would be to permit him to fashion such state laws as he chose." Id. at 127, n. 2. We agree. However, our legislature has in effect and policy allowed statutes to be severed by R.S. 24:175.
It is our opinion that the "Motor Voter Act" can work independently, as it addresses many areas of registering voters, i.e. at driver's license facilities, designated agencies, by mail. Additionally, it provides procedures for the removal of voters from the voting rolls, procedures for allowing certain persons to vote, and provides for violations and penalties. While we view Act 10 as an omnibus registration bill, it is our opinion that the provisions of the act are not so systematically integrated, as in the Georgia case, that the provisions cannot be severed.
We hope this opinion addresses all of your concerns. If we can be of additional assistance in this matter, please contact our office.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _________________________________ ANGIE ROGERS LaPLACE Assistant Attorney General
RPI/ARL/pb
cc: Secretary of State's office Commissioner of Elections' office U.S. Department of Justice, Zita Johnson-Betts
Hon. Joseph Accardo State Representative P.O. Box 44486 Baton Rouge, LA 70804-4486
Hon. Emile "Peppi" Bruneau, Jr. State Representative 145 Robert E. Lee Blvd., Suite 206 New Orleans, LA 70124
DATE RECEIVED:
DATE RELEASED:
ANGIE ROGERS LAPLACE ASSISTANT ATTORNEY GENERAL